**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARY AIAD AGAIBY HAROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-01029** |
| | ) | **Judge Aleta A. Trauger** |
| **AMAZON (WAREHOUSE),** | ) | **Magistrate Judge Jeffrey Frensley** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court are plaintiff Mary Harown's Objections (Doc. No. 48) to Magistrate Judge Jeff Frensley's Report and Recommendation ("R&R") (Doc. No. 47), which recommends that the Motion for Summary Judgment (Doc. No 42) filed by defendant Amazon.com Services LLC (improperly named in the Complaint as "Amazon (Warehouse)") ("Amazon") be granted and that this case be dismissed. For the reasons set forth herein, the court will overrule the plaintiff's Objections and grant the Motion for Summary Judgment.

## I.      RELEVANT UNDISPUTED FACTS

The plaintiff began working as a fulfillment associate for Amazon at a fulfillment center in Murfreesboro, Tennessee in August 2016. (Doc. No. 42-1, Lott Decl. ¶ 4.) As a fulfillment associate, the plaintiff was required to lift up to 49 pounds, stand or walk continuously for 10–12 hours per day, and frequently push, pull, squat, bend, and reach. (Doc. No. 42-2, at 11–12, Pl.'s Dep. 16–17; Doc. No. 42-2, at 45, Job Description.)

After giving birth to a child in late 2016 and taking a couple of months of maternity leave, the plaintiff returned to work in February 2017 with temporary physical restrictions that Amazon accommodated by placing the plaintiff on a Transitional Work Assignment ("TWA"). (Lott Decl.

¶ 6.) The plaintiff's doctor lifted the restrictions in July 2017 but limited her to working 8 hours per day, which Amazon accommodated by continuing her TWA through February 2018. (*Id.*)

The plaintiff sought medical attention for back pain beginning sometime in 2017. (Doc. No. 42-2, at 35, Pl.'s Dep. 65.) The plaintiff's last day of physically working for Amazon was February 24, 2018. (Lott Decl. ¶ 8.) She was initially granted a medical leave of absence and short-term disability benefits from March 2, 2018 through August 30, 2018. (Doc. No. 42-2, at 29, 36, Pl.'s Dep. 40, 74.) She underwent back surgery in November 2018. (*Id.* at 35, Pl.'s Dep. 65.) After her back surgery, her condition did not improve. (*Id.* at 22, Pl.'s Dep. 30.)

The plaintiff was asked during her deposition about a supplemental pleading she filed on January 5, 2021, in which she states that she had surgery on her back "hoping it would get better." (Doc. No. 7, at 3.) She explained that it did not: "Unfortunately it didn't get better after the surgery and the pain was the same. I couldn't do anything I was just laying on the bed and I couldn't even get up, even in my sleep I was having pain. Nothing was helping the pain . . . ." (*Id.*) She was asked during her deposition, "And that is how you felt in January of 2020, correct?" (Doc. No. 42-2, at 22, Pl.'s Dep. 30.) The plaintiff responded, "Yes." (*Id.*) Asked if she still felt that way, as of the date of her deposition, the plaintiff again responded, "Yes." (*Id.*)

Pursuant to Amazon's Medical Leave of Absence policy, the plaintiff's medical leave expired on August 30, 2018. As an accommodation, Amazon extended it through November 20, 2019. Also in August 2018, the plaintiff transitioned from short-term disability leave to long-term disability, receiving long-term disability benefits. She continued to receive long-term disability benefits through August 2020. (Doc. No. 42-2, at 47, Claim Status Summary; *id.* at 29, Pl.'s Dep. 40.)

On January 9, 2020, the plaintiff had an office visit with Edward Osuigwe, a Physician's Assistant ("PA") in Dr. Victor Isaac's practice (*see* Doc. No. 48-1, at 1), specializing in pain management. According to the Attending Physician's Statement – Progress Report he filled out on January 18, 2020 for the plaintiff, as of January 9, 2020, the plaintiff could sit, walk or stand intermittently for up to one hour at a time, for no more than 4 hours per day; could never bend, kneel, crouch, climb, or balance; and could lift no more than 5 pounds, whether frequently or occasionally. (Doc. No. 42-2, at 49–50.) Her "Expected Return to Work" date was "N/A" (*id.*)— in other words, Osuigwe did not attempt to project a date by which the plaintiff would be ready to return to work. The plaintiff conceded in her deposition that, as of January 2020, she was unable to perform the job duties required of a fulfillment associate, based on Osuigwe's evaluation. (Doc. No. 42-2, at 32, Pl.'s Dep. 52.)

Amazon terminated the plaintiff's employment on February 22, 2020, based on her inability to return to work after her extended leave expired in November 2019. (Lott Decl. ¶ 9.)

## II.    PROCEDURAL HISTORY

In November 2020, the plaintiff filed her *pro se* Complaint asserting that Amazon violated her rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. (Doc. No. 1.) Specifically, she alleges that, by terminating her, Amazon discriminated against her on the basis of disability and failed to provide her a reasonable accommodation.

In March 2023, the Magistrate Judge granted Amazon's Motion to Deem Admitted Requests for Admission Served on Plaintiff, based on the plaintiff's failure to respond within a timely fashion to the Requests for Admission ("RFAs") and her failure to respond to the defendant's motion. (Doc. Nos 39, 40.) In granting the motion, the Magistrate Judge reminded the plaintiff that she was responsible for responding to the defendant's discovery and for following the court's Case Management Order. (*See* Doc. No. 40, at 3.) The plaintiff filed a Response to the

court's Order, stating that she had responded to the defendant's written discovery. The documentation attached to her Response, however, shows that she responded to the defendant's First Requests for Production of Documents (Doc. No. 41, at 6) and First Interrogatories (*id.* at 22) but does not establish that she responded to the RFAs.

Just over two months after filing the Motion to Deem Admitted, the defendant filed its Motion for Summary Judgment, supporting Memorandum of Law, Statement of Undisputed Material Facts ("SUMF"), and copies of the exhibits cited in its SUMF. (Doc. Nos. 42–44.) It argues that it is entitled to summary judgment on the plaintiff's ADA claims, because the undisputed facts establish that she was unable to perform the essential functions of her job after her back surgery, with or without a reasonable accommodation, and, therefore, cannot establish a *prima facie* case of disability discrimination or a failure to accommodate. It also argues that it went far beyond what was required by granting the plaintiff two years of leave before terminating her employment. Several of the facts in the SUMF rely upon the RFAs that have been deemed admitted and were attached as an exhibit to the defendant's Motion for Summary Judgment. (*See* Doc. No. 42-4.) Most notably, the plaintiff is deemed to have admitted that she could not perform any of the job duties of her position or the job duties of any Amazon warehouse job and that no accommodation would have permitted her to perform the duties of the job she had at Amazon or of any other warehouse job at Amazon, from March 2, 2018 through February 23, 2020. (*See* Doc. No. 42-4 ¶¶ 4–14.)

The plaintiff filed a Response in opposition to the Motion for Summary Judgment (Doc. No. 45), but she did not respond to the SUMF or present her own evidentiary material in support of her position. In her Response, she argues that there are material factual disputes and that her doctors' reports establish that she could have returned to work with restrictions, but Amazon

refused to allow her to return to work with the necessary accommodations. Specifically, she claims that Amazon denied her requests to work in an "ICQA" position, "which requires very little effort and can be performed standing up or [sitting] down," and refused her request to work the "big and light" line rather than the "small and heavy" line. (Doc. No. 45, at 1–2.) She insists that her doctors never said she could not work and instead indicated that she could work with restrictions, but Amazon fired her rather than helping her find work within her restrictions. (*Id.* at 2.)

She also argues very broadly that, although her job called for lifting up to 49 pounds, there were no scales at Amazon, and she was frequently required to lift weights much heavier than 49 pounds, which is "what exactly put [her] where [she is] today." (*Id.*) Her position is essentially that the conditions at Amazon are "inhuman" [sic] and that the treatment she received from Amazon is also "inhuman," causing her great mental distress. (*Id.*) She also asserts that she has had many "surgeries and medical procedures to improve since" her initial back injury caused by working at Amazon, but her "condition keep[s] worsening." (*Id.*)[1]

In its Reply, Amazon points out that the plaintiff did not respond to its SUMF. It argues that the plaintiff's assertions in her Response are not supported by the evidentiary record, contradict her deposition testimony, and are not sufficient to create a material factual dispute as to her ability to perform the essential functions of her job, with or without an accommodation.

---

[1] The cover letter from the U.S. Equal Employment Opportunity Commission ("EEOC") accompanying the EEOC's Notice of Rights, explained to the plaintiff that, as the investigator had discussed with her during her intake interview, the EEOC "has no jurisdiction over issues related to worker's compensation." (Doc. No. 1-1, at 1.) The same letter explained the EEOC's finding that, because she was still on long-term disability at that time, had been "unable to work and [had] no specific date" projected for her return to work, and remained unable to perform simple housework or care for her children, the EEOC was "unable to determine that a violation occurred under the ADA." (*Id.*)

The Magistrate Judge recognized that the plaintiff had failed to file a response to the defendant's SUMF as required by this court's Local Rule 56.01(c). Although Local Rule 56.01(f) states that, if a responding party fails to file a timely response to a moving party's statement of undisputed facts, "the asserted facts shall be deemed undisputed for purposes of summary judgment," the Magistrate Judge noted that the defendant always has the burden of establishing that it is entitled to summary judgment. In accordance with the Federal Rules of Civil Procedure, the Magistrate Judge conducted a thorough review of the evidence supporting the defendant's factual statements to verify whether that evidence supported a conclusion that there was no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law. (Doc. No. 47, at 8–9.)

The R&R sets forth the standards governing ADA claims and notes in particular, as relevant here, that disability discrimination claims and failure to accommodate claims both require, as an element of the plaintiff's *prima facie* case, proof that the plaintiff is "otherwise qualified for the position [she seeks], with or without reasonable accommodation." (*Id.* at 12 (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996); 42 U.S.C. §§ 12111 and 12112; *see also id.* at 14 (same) (citing *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018)).) Based on the materials submitted by the defendant, including the admitted RFAs and excerpts from the plaintiff's deposition transcript, the Magistrate Judge concluded that the plaintiff had not presented proof that she was, in fact, able to perform the essential functions of her job, with or without a reasonable accommodation. As he explained:

> [T]he undisputed facts establish that for the two years between the time Plaintiff went out on leave until her termination in February 2020, Plaintiff was unable to perform her job duties or those of any other warehouse position, with or without accommodation, and it is further undisputed that one physician who was treating her told Plaintiff she "cannot perform any number of hours" of work. It is additionally undisputed that Plaintiff's physician found her condition to be

"unchanged" and he noted that she was unable to return to work, indicating that her return to work date was "N/A."

It is also undisputed that Plaintiff has not applied for, or had, any jobs since 2020, because there is nothing within her limitations, and that, at the time of her deposition in March 2023, Plaintiff testified that she still could not do anything but lie in bed, as she was unable to even get up. Thus, Plaintiff's own testimony demonstrates that she was not a "qualified individual with a disability" who could perform the essential functions of any position at Defendant's warehouse, with or without accommodation. The law is well-settled that, if a plaintiff cannot show that she can perform the essential functions of a position, with or without accommodation, then she is not a "qualified individual with a disability" within the meaning of the ADA, and she cannot make out the requisite *prima facie* claim of discrimination. *See, e.g.*, *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998).

Additionally, the undisputed facts further establish that Plaintiff transitioned from receiving short term disability benefits to receiving long term disability benefits beginning August 2018, and she continued to receive long term disability benefits through August 2020. The fact that Plaintiff applied for, and received, long term disability benefits further demonstrates that she was not a qualified individual with a disability under the ADA, as an ADA plaintiff claiming to be "qualified" and able to work "cannot simply ignore the apparent contradiction that arises" when they also have a simultaneous long term disability claim. *See Williams v. London Util. Comm'n*, 375 F. 3d 424, 429 (6th Cir. 2004), quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). To survive Amazon's motion for summary judgment, the Plaintiff must provide an explanation sufficient to warrant a reasonable juror finding that, despite her statements that she is unable to work, she could nonetheless perform the essential functions of her job with reasonable accommodation. *See Cleveland*, 526 U. S. at 806-807; see also *Griffith v. Walmart Stores, Inc.*, 135 F. 3d 376, 383 (6th Cir. 1998).

The Plaintiff has not met this burden.

(Doc. No. 47, at12–13 (internal record citations omitted).)

In reaching the determination that the plaintiff could not establish that she was a qualified individual with a disability able to perform the essential functions of her job with or without reasonable accommodation, for purposes of either her discrimination claim or her failure to accommodate claim, the Magistrate Judge specifically refused to credit the plaintiff's assertions in her Response that she would have been able to work while she was on short term disability as "both unsupported by the evidence and contradicted by her deposition testimony." (*Id.* at 14.) The

Magistrate Judge noted: "It is Plaintiff's deposition testimony rather than her current unsupported assertions that is in fact consistent with statements made in support of her [application for] long-term disability benefits." (*Id.* at 13–14.) Because plaintiff failed to provide an explanation for the inconsistency, the Magistrate Judge concluded that she could not prove that she was able to perform the essential functions of her job. (*Id.* at 14.)

The R&R notified the plaintiff that, if she disagreed with the Magistrate Judge's recommended disposition, she had fourteen days within which to file "specific objections." (*Id.* at 15.) The plaintiff filed timely Objections in which she again complains about the generally inhumane working conditions at Amazon, asserts that she would not have been injured if Amazon had complied with "safety procedures and weigh[t] limits laws," and claims that Amazon repeatedly "refused" to acknowledge paperwork provided by her doctors stating that she could "work with certain restriction[s]." (Doc. No. 48, at 1–3.)

Amazon filed a Response to the plaintiff's Objections, arguing that the plaintiff's Objections are "nothing more than an improper repackaging of Plaintiff's arguments from her opposition to Amazon's Motion for Summary Judgment" and do not trigger *de novo* review of the defendant's motion. (Doc. No. 49, at 2.)

## III. LEGAL STANDARD

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## IV.     THE PLAINTIFF'S OBJECTIONS

The plaintiff's primary objection to the R&R appears to be that Amazon did not treat her fairly. Pointing to medical records attached to the Objections, she asserts that, (1) as of May 9, 2018, after a hysterectomy, she could have returned to work with no lifting heavier than 20 pounds and no prolonged standing for more than 3 hours (*see* Doc. No. 48-1, at 2), but Amazon refused to

accommodate her restrictions;[2] (2) as of June 7, 2018, she had a doctor's note stating she could not "work for more than 8 hours and/or stand [sic] for more than 1 hour daily" (Doc. No. 48-1, at 1), and another note in September 2018, again stating that she could not work for more than 8 hours "and/or sit and stand for more than 1 hour daily" (*id.* at 7), but Amazon refused to let her return to work; (3) after she had spine surgery in November 2018, she had a doctor's note dated January 9, 2019 stating that she was released to return to work on January 10, 2019, with restrictions (lifting no more than 10 pounds with "[n]o continuous bending, lifting or twisting (*id.* at 8), but "again Amazon refused" (Doc. No. 48, at 2); (4) the plaintiff underwent two more surgeries between March 2018 and February 2020, and, although Amazon "sent [her] paper to fil[l] out at the doctors and take back to [Amazon] and [she] did," Amazon still refused to let her return to work, despite her doctors' reports "clearly stating [she] can work with restrictions," and instead terminated her in February 2020. (*Id.* at 2–3.)

The "paper" to which she refers appears to be Dr. Victor Isaac's Attending Physician's Statement – Progress Report, dated May 23, 2019, on which Dr. Isaac projected an "Expected Return to Work Date" of August 23, 2019, with restrictions, including sitting for no more than 2 hours at a time and a total of no more than 6 hours per day; standing and walking for less than 1 hour at a time for no more than 2 hours per day; no bending at the waist, kneeling, crouching, or climbing; only occasional (up to 2.5 hours per day) balancing or driving; occasionally lifting up to 10 pounds and frequently lifting as much as 5 pounds. (Doc. No. 48-1, at 10.) Her current status at the time of this progress report, however, was "unchanged," rather than either recovered or improved. (*Id.*)

---

[2] The plaintiff states that she had a hysterectomy in March 2018. She does not indicate that the medical provider prescribing the work-related restrictions in May 2018 had any knowledge of her restrictions related to back pain.

Finally, the plaintiff attempts to refute specific findings in the R&R, including:

(1) Page 4 states she left work in March 2018 for back pain; the plaintiff states she actually left to have a hysterectomy (of which there is no evidence in the court's record).(Doc. No. 48, at 3.)

(2) Page 5 states that she was absent from work for 26 weeks and that Amazon kept renewing her "sick time"; she states this was "not by choice" but because Amazon refused to let her return to work with restrictions. (*Id.*)

(3) Page 6 states that she was unable to return to any position. The plaintiff maintains that this is inaccurate, because Amazon could have placed her in an "ICQ" position, which is a "sit and scan position where you do not even move the items you [are] scanning, you just scan it sitting down or standing up if you want."(*Id.*) Amazon's failure to place her in an ICQ position, according to the plaintiff, just shows "how hateful and abusive Amazon [is] and how [it] did not want to take me due to my disability. . . . Amazon kept extending my sick leave to run me out of time and get rid of me, while my disability was a direct result of working for Amazon at the first place." (*Id.*)

(4) On page 12, the R&R states that, after her surgery in November 2018, all the plaintiff could do was lie on her back. The plaintiff contends now that this finding mischaracterizes her deposition testimony. She claims that she was only referring to her "recovery period following the surgery," as she had a note stating she could return to work in January 2019. (*Id.* at 4.)

(5) As for the Magistrate Judge's finding of a conflict between applying for and taking LTD leave, the plaintiff explains that it was "simply about the money." (*Id.*) Because Amazon would not let her return to work, she had no "options but to take the long term disability because I must provide for my family." (*Id.*)

## V.    ANALYSIS

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The "failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). The ADA does not require fairness *per se*.

Rather, to prove a *prima facie* case of discrimination under the ADA, a plaintiff must establish, among other things, that she is "disabled and otherwise qualified for the position, either

with or without reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)). Likewise, to prove a claim for failure to accommodate, the plaintiff must establish that, despite her disability, she is "otherwise qualified" for her position, "either with or without a reasonable accommodation." *Williams*, 847 F.3d at 391.

If an employee seeks to stay in her current job, the term "reasonable accommodation" means: "Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). A suggested accommodation is not reasonable if it requires eliminating an "essential" function of the job. *Rorrer*, 743 F.3d at 1039). Although a "'reasonable accommodation' under the ADA may include 'reassignment to a vacant position,'" to overcome summary judgment, a plaintiff "generally must identify the specific job he seeks and demonstrate that he is qualified for that position." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869, 870 (6th Cir. 2007).

The Magistrate Judge found that Amazon is entitled to summary judgment in this case, because the undisputed facts establish that, for the two years prior to her termination in February 2020, the plaintiff was unable to work any job. The plaintiff attempts to refute that finding now by introducing into evidence doctors' notes from 2018 and 2019 that, she claims, establish that she would have been able to return to work if Amazon had been willing to "accommodate" the restrictions identified in those doctors' notes.

This attempt is unavailing for several reasons. First is that the plaintiff's assertions that she would have been able to work are contradicted by her own supplemental pleading, filed on January

5, 2021, in which she stated that she was in excruciating pain before her surgery and unable to work even 24 hours per week and, after the surgery, was unable to do anything but lie on the bed. (Doc. No. 7, at 3) In her deposition, she affirmed the truth of her statements in the supplemental pleading and also confirmed that her condition remained the same both in January 2020 and as of the date of her deposition on March 21, 2023. (Doc. No. 42-2, Pl.'s Dep. 30.) Her physician did not authorize her to return to work after her office visit in January 2020, finding her condition "unchanged." (Doc. No. 42-2, at 50.) In other words, as the Magistrate Judge found, the evidence in the record, including the plaintiff's own testimony, establishes that she was not a "qualified individual" who could perform the essential functions of her job, even with a reasonable accommodation, as of the date she was terminated or at any time during the two years preceding her termination. (Doc. No. 47, at 12–13.)

In addition, even if the court were inclined to consider the plaintiff's new evidence that she claims establishes that she could have worked with restrictions, the plaintiff has not shown that the doctors' notes identifying her restrictions in May, June, and September 2018 and January 2019 would have permitted her to perform the essential functions of her position, given the physical demands of that position. Insofar as the plaintiff claims she could have worked in an ICQ position, which would have allowed her either to sit or stand at will, the plaintiff has no evidence that such a job was available. She also does not have competent evidence regarding the essential duties of that position, so she cannot show that she could perform them, with or without an accommodation. Moreover, by failing to respond to Amazon's RFAs, the plaintiff effectively admitted that she was unable to perform the essential functions of any Amazon warehouse job from March 2018 through February 2020, with or without a reasonable accommodation.

The court has reviewed the plaintiff's Objections *de novo*, in light of the entire evidentiary record, and finds them to be without merit.

**VI.     CONCLUSION**

For the reasons set forth herein, the court will overrule the plaintiff's Objections (Doc. No. 48), accept the R&R (Doc. No. 47) in its entirety, and grant the defendant's Motion for Summary Judgment (Doc. No. 42). An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge